Case number four for argument this morning is EPIC Systems v. Tata Consultancy Services. Good morning, your honors, and may it please the court. My name is Katherine Winn-Brandt and I represent plaintiff appellant EPIC Systems Corporation. The district court erred in holding that post-judgment interest runs on EPIC's punitive damages award from the amended judgment in 2022 rather than from the 2017 judgment reflecting the jury's verdict. In prior phases of this litigation, the court has already made clear that the jury's decision to award punitive damages was factually and legally sound, and the only basis for reducing the original judgment was the $140 million cap on punitive damages under the Constitution. In other words, the factual and legal basis for EPIC's entitlement to punitive damages have been left undisturbed since the 2017 judgment was entered. After all, the jury was impaneled only once, meaning that the district court's amended judgment was effectively reinstating the portion of the jury's initial award that fell within the constitutional limit. Ms. Winn-Brandt, the district court here is in a position of Western District of Wisconsin applying Seventh Circuit law. It's got Devane, it's got Harris, and then there's a lot of out-of-circuit precedent as well. Is there a delay between Devane, Devane 2, and Harris, and how would that apply for this case? We believe that Devane and Harris are fully consistent with our position here. Devane is probably an easier place to start because it helps us draw the line between a judgment that is inappropriate to run post-judgment interest from and an excessive judgment that is appropriate to run post-judgment interest from. So that earlier judgment in Devane 2 was factually and was not factually or legally sound, and the court had further fact-finding work to do. Whereas in that second judgment, it was excessive, but post-judgment interest could run from that judgment because the bases for the judgment were factually and legally sound. Harris is a case that predates the Supreme Court's opinion in Kaiser, but even there, the factual and the legal errors in that opinion, as the court said, they infected the judgment as a whole and to the extent it was impossible to say, is the quote from And so what the court had to do was go back and start from scratch. Whereas here, what the district court had to do was determine where an outer boundary of punitive damages would lie. And in doing so, it had to consider the facts and circumstances of the case as the jury found them. And the court understood that it was preserving a component of the jury's initial verdict, as it had to, because the decision did not go back to the jury. And neither party has identified a case where damages were determined by a jury in the first instance, and post-judgment interest ran from a later judgment without needing to send the damages issue back to a jury. And the same result should obtain here. If you step outside the case law for a second, and you think of the case as presenting a question of statutory interpretation, what are the one or two sentences you would urge judges to adopt to reflect an accurate construction of the statute? So I think the starting point here needs to be Kaiser's meaningfully ascertained standard. But if we're looking at the statutory text, I'd urge this court to look at two tools. And those are the two tools we cite in our brief. One is contemporaneous legal dictionaries that look to the word recovered as being the point at which an individual's factual and judicial record is established. And the second is the pre-enactment precedent of the Supreme Court interpreting virtually identical statutory language using the word recovered, and making clear that it's immaterial what the label of the disposition was and what the court should look to as what was happening in substance. And any matters that are reflected in the first judgment and incorporated into the new need to be understood as being embodied in the first judgment, and therefore post-judgment interest runs from that first judgment. So as a matter of statutory interpretation, we would look to the dictionaries and the pre-enactment precedent. And we think Kaiser's meaningfully ascertained standard... What strikes me as odd about this case, counsel, is the district judge distinguished between the $140 million in compensatory damages and the $140 million in punitive damages, even though they're both covered in the 2022 judgment. So if the punitive damages were not recovered in 2017, why would the compensatory damages be recovered in 2017? I could imagine treating them the same, but I'm having trouble with the difference. Have you found any cases that distinguish for the purpose of the word recovered between these kinds of things when there's a new judgment? It's a good question, Your Honor. And I don't believe we've found cases that have distinguished the word recovered in that regard, but the way the cases just tend to treat judgments is looking at punitive damages separate from compensatory damages. But if the court were to want to consider those the same, and it's a good point that the 2022... I hope you understand my problem. I hope Mr. Conrad does too. If the $140 million in punitive damages was not recovered until 2022, I don't understand why the $140 million in compensatory damages was not recovered until 2022. I'm having trouble seeing how the statutory languages distinguish between the two. I can imagine treating them as both 2017 or both 2022. I'm having trouble with the distinction. Well, certainly, Your Honor, we believe that to the extent this court were to treat them the same, they would both have to run from the 2017 judgment, and TCS does not disagree that the... Well, TATA has conceded that the compensatory damages run from October of 2017. Precisely. But since the whole award was restated in 2022, I don't understand how that concession is consistent with defending the district court's decision. And I'm trying to figure out, you know, the statute doesn't clearly resolve this one way or the other. Are there cases that tackle this problem? Maybe not. The cases that we believe are helpful in tackling this problem are the ones that look at punitive damages being vacated as excessive and reduced, Johansson and Exxon and Dunn. And those were cases where there were compensatory damages awards as well. And so to that extent, the court's treatment of punitive damages as a distinct question to determine whether those were meaningfully ascertained as of the earlier judgment, those cases are instructive. But to the extent those cases are not instructive, then it would counsel in favor of automatically running post-judgment interest from the date of the initial award. And then you would just look to the legal dictionary... It could be. It could automatically start in 2017. But I could certainly imagine a rule that damages are recovered for purposes of 1961A under the judgment that's actually being executed. And the judgment being executed was entered in 2022. Your Honor, we would submit that that is just inconsistent with the whole of the case law that we've cited in our briefs, in addition to the purposes of the statute. And we think the Supreme Court's articulation of the purpose of the statute in Kaiser and this court's articulation of the purpose of the statute in Merritt are instructive here, where the court looks to whether it's more just for an adjudicated wrongdoer to hold on to interest-free money during the period of time between when the damage is first ascertained and payment of the judgment. And here, it is certainly more just for TCS as the adjudicated wrongdoer to not hold on to interest-free money, which it does not dispute, allowed it to reap hundreds of millions of dollars in benefits during that relevant period. How much discretion, excuse me, do you think the district court had to reduce the number on remand? We don't believe the district court had any discretion to reduce the award. But is that view, though, is that consistent with what we wrote in our prior, in the prior opinion? Because we say, you know, at most. We say at, this court did say at most in the prior opinion, and I do want to be mindful of saving a minute for rebuttal, but to complete the answer to your question, this court clarified in Epic II that in Epic I, this court had determined that $140 million was constitutional and the constitutional issue was all that was left. So, we disagree that the district court had discretion on remand, but nothing, nothing about this question. Hold on, say that again, you disagree? We don't think that the district court had discretion to reduce the award below $140 million on remand. Yeah, okay, that's a, all right. But we don't believe anything in this, in this appeal turns on that, because whatever amount that the district court had imposed on remand from Epic I would have been a component of the jury's initial verdict. And I will save the remainder of my time for rebuttal. Mm-hmm. You've saved about 10 seconds. Mr. Conrad. Good morning. May it please the court, Neil Conrad for TCS. The district court's decision should be affirmed because it is correct under the plain language of the statute, consistent with the case law, and in particular, the most important cases. On your view of the plain language of the statute, why isn't interest on the compensatory damages deferred till 2022? Compensatory damages were treated differently in this case because there was an agreed order regarding security during post-judgment proceedings. That's fine. But the judgment that is going to be executed was entered in 2022. It provides for both compensatory and punitive damages. I can't see any dating difference for purposes of the statutory language, civil case recovered in a district court, between the two amounts. They were initially provided in 1917, and then there was a new judgment in 2022. I can imagine running interest on both of them from 2017, or both of them from 2022. I hope you can see why I'm having trouble starting the running on one of them at one time, and the other five years later. Judge Easterbrook, I do understand the point about the statutory language. My point is that the parties agreed, essentially by contract through the agreed order, to treat compensatory damages differently. In that order, what TCS and EPIC agreed to do was that as soon as a portion of the judgment was affirmed on appeal, and there were no further opportunities to seek appellate review, including through a petition for cert to the Supreme Court, TCS agreed to pay that amount. That's exactly what happened. What was the date of that? The date of the agreed order? Of the payment. I actually don't know off the top of my head what the date of the agreed payment is. The year? It is referenced in the briefing on the post-judgment interest issue in the district court, and also referenced in the district judge's order. I don't remember the specific year, but it was before the parties even submitted the briefings on the post-judgment interest with respect to punitive damages issue in the district court. So that was completely off the table when Judge Conley took this issue up, and the parties briefed it and disputed how post-judgment interest would be dealt with with respect to the punitive damages award. That's essentially why it's been removed from the case. So what you're saying on that is EPIC tried to mitigate what it was going to have out of pocket by paying quickly, narrowing the litigation, and the litigation narrowed to focus on when the interest was going to run on the punitives. That just is a very practical matter what happened. I think you said EPIC, but I think you meant TCS. Yes, TCS.  Essentially, that's right. The parties agreed to basically limit the issues going forward. They did this ex ante because they knew that there were going to be different kinds of compensatory damages potentially and punitive damages. It's a very practical solution to a problem. It's been removed from the case. And I don't think it affects the question before the court now. It's just out of the case. And the question before the court now is what to do about post-judgment interest with respect to punitive damages. Is there any legal significance, Mr. Conrad, in your view to the fact that the prior judgment was vacated? I do think there is legal significance to that. In particular, the legal significance is the punitive damages portion of that original judgment was vacated, and therefore there is no basis on which to say the amount of punitive damages were meaningfully ascertained. Would the action change if, in the prior opinion, the final paragraph said reversed and remanded so the judgment can be modified? I do think that makes it a harder case. I still think we have arguments with respect to the plain language of the statute, and some of the cases that have been cited in the briefing I think would still support us because they would focus on just the reversal. But it's a harder case, I recognize, because there are out-of-circuit cases that we wouldn't be able to as easily distinguish. The fact that the judgment, sorry, the fact that the opinion from Epic One says at most makes this an easy case for us. The reason why is because there's no way you could say that punitive damages were meaningfully ascertained until the district judge on remand applied the guidance from this court in Epic One, considered the record again, and set a new judgment. And I want to make two points. Did you really think on remand, though, that the range was going to be from $1 up to and including $140 million? Anything in between? We thought that we had very strong arguments for why, if punitive damages were going to be awarded at all, that they should be much closer to $1 than $140 million. But the district court had already entered a judgment for $280 million in punitive damages. That's right, but he had done so essentially under an incorrect view of the law, which was corrected by this court in Epic One. I mean, that's the whole point, as I take it, of the Epic One decision and its discussion of punitive damages. It said a few things. First of all, it came back in and essentially disagreed. It said a few things that it then took back. It said, among other things, that the antitrust laws are unconstitutional because they provide for treble damages. All of that language was rescinded. I hope you're not relying on it. I'm not. My point is that the district judge and clearly the jury had a different view about the egregiousness of TCS's conduct and how to think about the alleged harm in this case. In Epic One, this court very clearly said that was the wrong way to look at it. There's important discussion about how the harm proven was minuscule at most. If we're talking about actual harm, it was the cost of investigation. It wasn't this much more grandiose number that really looked at potential harm. And this court also said that, yes, the conduct was inappropriate. We don't dispute that, and we're not relitigating that issue. But it also said it wasn't outrageous. It wasn't egregious. That all affected essentially a reset of how to think about the facts going forward in the case. I want to ask you a question about that, a line-drawing question. Where would you draw the line on whether a remand involves a mechanical calculation? Like a subset of that would be do you believe this court's decision in Devane 2, which adjusted the attorney's fee award on appeal, was that merely mechanical? No. The Devane 2 decision that cut the attorney's fee award from $500,000 to $350,000 was not mechanical because it was correcting the legal principles that applied to the court's determination of what that award was. It wasn't just mechanical because it involved the application of new legal principles to the facts and a reassessment of the number. A mechanical application would be something like really we'll go all the way back to 1891, the Neelan case that my friend on the other side is referencing. That's a situation where you had a judgment that essentially reflected a formula for how to calculate amounts due to certain interveners, and it involved a rate and a year. And the court came in and said, no, this is miscalculated. You kick out this line item, these few line items, and you think about the years a little bit differently. You essentially remove some portion of a year. That's your judgment. That's a mechanical calculation. That's applying a formula to get to a fixed sum where there's nothing for the lower courts to do. That's not this case. This case is a situation where Epic 1 changed the legal principles that applied to the case and applied to the way the district judge was supposed to think about punitive damages, and it remanded for the district judge to do that analysis. My friend on the other side said there was no discretion for the district judge to reduce the award further. That is incorrect. It's both inconsistent with the wording of the Epic 1 panel opinion that said, think about this again. You can go up to at most $140 million, but you've got to reassess this. And importantly, and this picks up on something Your Honor was referencing, Judge Brennan, that's how Judge Conley understood it too. Judge Conley understood that to be his instructions on remand. He describes that in the order that's subject to review right now. And he himself, who is eminently familiar with the procedural history of the case and knew it backwards and forward, he himself did not think that the punitive damages were meaningfully ascertained until he did that analysis and entered the judgment in 2022. Stepping back to just pick up on a few other points, to answer your question about whether there's any daylight between Devane and Harris, I don't think that there is. I didn't understand the answer from my friend on the other side. In both cases, what you had was the vacater of an earlier judgment or award. It gets remanded for reconsideration. It's not just a mechanical calculation. And in both cases, this court says you run the post-judgment interest from the later judgment on remand. How are we to deal with all this other out-of-circuit case law that goes the other way? So two comments there. One, I think it's easy to distinguish that because this is a very unique procedural posture where you had the articulation of new legal principles in Epic I and a remand to the district judge to consider it anew. The other cases they talk about from the 11th Circuit and from other circuits didn't have that kind of open-ended remand where the district judge was applying newly articulated legal principles to facts that essentially had been adjusted by the Court of Appeals panel. So that's number one. Number two, I don't think you need to take this on, but I do think a lot of those cases run contrary to the plain meaning of the statutory language and are inconsistent with the Supreme Court's decision in Kaiser Aluminum which said very clearly, don't do equity. We apply the plain meaning of the language, and the plain meaning of the language says you look at the judgment where the plaintiff is seeking execution. That's the judgment in this case. That was part of the discussion where the court said the lower courts applying equity had been running the judgment to the verdict and said look at the judgment. Thank you, Your Honor. You have ten seconds. How fast can you talk? Oh, eight seconds, sorry. Allow me to attempt to make three quick points. Depends on how fast you can talk. The plain language argument must be wrong. Kaiser would have said in post-judgment interest runs from the latest judgment. Vacatur, Exxon, Johansson, and Dunn involved fully vacated judgments. And three, the scope of the remand arguments have been rejected by this court, and they don't matter. And for those reasons, we respectfully request this court run post-judgment interest from the earlier judgment. Thank you very much. The case is taken under advisement.